FILED

2009 Dec-14  AM 10:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **PRINCIPAL LIFE INSURANCE** ) | |
| **COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.:  2:08-cv-667-RDP** |
| ) | |
| **ALICE H. SMITH, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION**

The court has before it two motions for summary judgment.  The first is the September 18, 2009 motion (Doc. #23) of Defendant Alice H. Smith for summary judgment.  The second is the September 18, 2009 motion (Doc. #24) of Defendant Alma Sue Smith for summary judgment.  Pursuant to the court's order of August 26, 2009, the motions for summary judgment are now under submission.

Having considered the briefs and evidentiary submissions, the court finds that the motion filed by Alice H. Smith is due to be granted in full and the motion of Alma Sue Smith is due to be denied for the reasons outlined below.

I.  **Procedural History**

Plaintiff Principal Life Insurance Company ("Principal Life") commenced this action on April 15, 2008 by filing an interpleader complaint (Doc. #1) in this court.  The Complaint details the competing claims of Alice H. Smith, Alma Sue Smith and Cynthia Butler Smith to the same life insurance benefits from coverage for the deceased Richard R. Smith.  (*See* Docs. #1 & 9).  All three Defendants answered the Complaint: Alice Smith filed an Answer (Doc. #7) on June 13, 2008; Cynthia Butler Smith filed a *pro se* Answer (Doc. #5) on May 5, 2008, disclaiming any interest in

favor of Alma Sue Smith's claim; and on June 23, 2008 Alma Sue Smith filed an Answer and Counterclaim against Principal Life (Doc. #8) asserting a state law claim for breach of contract and seeking mental anguish and punitive damages, in addition to the life insurance benefits.

On July 14, 2008, Principal Life filed a Motion for Leave to Deposit Funds with the Clerk, to Dismiss the Counterclaim filed by Alma Sue Smith, and to Dismiss Principal Life with Prejudice from the action. (Doc. #9). After the Court granted the motion in full (Doc. #11), Principal Life deposited $100,000.00 into the Registry of the Court, which was placed in an interest-bearing account in accordance with Federal Rule of Civil Procedure 67 and the general order of this Court entered January 25, 1983.

Both Motions for Summary Judgment (Docs. #23 & 24) assert that no genuine issue of material fact exists and that each defendant is entitled to judgment as a matter of law, thus entitling the party to the insurance benefits. The parties have filed briefs and submitted evidence in support of their respective positions concerning the pending motions for summary judgment. With regard to Alice H. Smith's motion, she submitted evidence[1] (Docs. #23) in support of her motion and also filed a supporting memorandum brief (Doc. #23) on September 18, 2009. On October 9, 2009, Alma Sue Smith submitted a brief and evidence[2] (Doc. #27) in opposition to the motion for summary judgment. Then, on October 20, 2009, Alice H. Smith filed a reply (Doc. #28) to Alma Sue Smith's opposition response.

---

[1] Alice H. Smith submitted: Statement of Stipulated Facts; Affidavit of Alice Ann H. Smith; Affidavit of Sandra Smith; Affidavit of Bobby Smith; Affidavit of Pamela Z. Saxon; Affidavit of Herbert E. "Chip" Browder; Affidavit of Jim Murray.

[2] Alma Sue Smith submitted in opposition to summary judgment: Principal Employee Change Form.

With regard to Alma Sue's Motion for Summary Judgment, on September 18, 2009, she filed a supporting memorandum brief and evidence[3] (Doc. #25) in support of her motion.  Alice H. Smith submitted a brief and evidence[4] (Doc. #26) in opposition to the motion for summary judgment on October 9, 2009.  Finally, on October 20, 2009, Alma Sue Smith filed a reply (Doc. #29) to Alice H. Smith's opposition response.

## II.    Legal Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *See id.* at 323.  Once the moving party has met her burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *See Fitzpatrick v. City of*

---

[3] Alma Sue Smith submitted: stipulation of the parties.

[4] Alice H. Smith submitted in opposition to summary judgment: February 1, 2007 Bonetti-Smith employment contract; February 26, 2007 Humana Beneficiary Change Form; January 1, 2004 Bonetti-Smith employment contract; Description of Benefits, Member Life Insurance form.

*Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge her initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.* facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, she can satisfy her initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to *affirmatively* show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point

4

out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets her initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## III.   <u>Relevant Undisputed Facts</u>[5]

### A.   Introduction

This action surrounds the unfortunate circumstances of Richard R. Smith's death and the life insurance benefits his beneficiary is due to receive. At this stage in the game,[6] both his ex-wife, Alma Sue Smith ("Alma Sue"), and his wife at the time of his death, Alice H. Smith ("Alice"), contend that she is due the benefits. Principal Life could not determine who was entitled to the funds without exposing itself to multiple liability, so it filed the instant interpleader action. It then became the court's unenviable task to decide which Mrs. Smith is entitled to the benefits.

---

[5] The parties submitted a stipulation of nineteen (19) facts. (Doc. #23, Ex. 1 & Doc. #24, Ex. 1). The vast majority of the facts stated by the court are derived from the stipulation of the parties. Where there is a dispute, it is noted, and stated in the manner most favorable to the non-moving party. *See Fitzpatrick*, 2 F.3d at 1115. The court notes, however, that these are the facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts'") (citation omitted).

[6] As explained earlier, Cynthia Butler Smith, daughter of Richard Smith, disclaimed any interest of the proceeds in her *pro se* Answer (Doc. #5), in favor of Alma Sue Smith.

### B.       The ERISA Insurance Plan

Richard R. Smith ("Richard) was an employee of the Bonetti Company, Inc. ("Bonetti") at the time of his death on April 12, 2007.  (Stip. of Parties ¶¶ 1, 4).  As an employee, Richard was a participant in the Bonetti Company, Inc. Group Life Insurance Plan ("the Plan").  (*Id*. ¶ ¶ 10-11). The Group Policy funds the Plan, an employee welfare benefit plan that is regulated by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461. (Compl. ¶ 9).  Although Bonetti served as the plan administrator, Johnson Insurance Services, LLC ("Johnson") served as agent for Bonetti in the administration of the Plan.  (Stip. of Parties ¶ 6).

The Group Policy states that "[i]f a Member dies while insured for Member Life  Insurance under this Group Policy, The Principal will pay his or her beneficiary the Scheduled Benefit in force on the date of death . . . ."  (Plan Doc., Ex. 1 to Doc.#9, at GC 150-2,  Article 2). The Policy allows for changes of designated beneficiaries as follows:

> A beneficiary should be named at the time a Member applies of enrolls under this Group Policy.  A Member may later change a named beneficiary by sending a written request to The Principal.  A change will not be effective until recorded by The Principal.  Once recorded, the change will apply as of the date the request was signed . . . .

(*Id.* at GC 150-2, Article 3).

The life insurance provided through the Plan contained basic coverage of $50,000.00 and allowed an employee to apply for supplemental coverage of $50,000.00.  (Stip. of Parties ¶ 9). Richard was enrolled in both the Basic Life Insurance and the Supplemental Life Insurance, for a total of $100,000.  (*Id.* ¶ 11).  The beneficiary designation submitted by Richard with his application and recorded by Principal Life was Alma Sue, who was Richard's wife at the time his application was accepted.  (*Id.* ¶ 12).

6

### C.     The Humana Change Form

In approximately February 2007, Richard requested a form from his employer, Bonetti, to change the designated beneficiary for his Bonetti benefits.[7]  (Aff. of Alice Smith; Ex. 1 to Aff. of Chip Browder).  The form he received and executed was entitled "Humana Change Form."  (Ex. C to Compl.).  Under the "Change Beneficiary" section of that form, Richard indicated that he wanted to change his "Basic Life" primary beneficiary to "Alice Smith" with a secondary beneficiary of "Cindy Smith."[8]  (Id.).    On February 26, 2007, both Richard and Alice executed the change form. (Id.).

As instructed by Bonetti, Richard then sent the executed change form to Johnson, the designated agent for Bonetti.  (Stip. of Parties ¶¶ 6, 15).  Johnson received the "Humana Change Form" and forwarded it to Humana, the underwriter of Bonetti's health and dental insurance.  (Id. ¶¶ 8, 16).  Johnson did not forward the form to Principal Life.  (Id. ¶ 16).

### D.     The Competing Claims

After Richard's death on April 12, 2007, Principal Life received three competing claims for the life insurance proceeds.  (Compl. ¶¶ 16-18).   The first claim was from Alice, filed on May 8, 2007.  (Id. ¶ 16).  Alma Sue filed her claim on May 21, 2007, and Cynthia Smith Butler filed her claim four days later.  (Id. ¶¶ 17-18).

---

[7] In her opposition brief, Alma Sue states that she "disputes" this fact.  (Doc. #27 at 2).  Alma Sue, however, cites no evidence to support her dispute of the evidence presented by Alice that Richard requested a form from  his employer to change his beneficiary.  Without any counter-evidence, the court cannot allow mere argument in a brief to trump the evidence submitted to establish a fact.

[8] In notes written in another handwriting, the document reads "Term ex-wife."  (Ex. C to Compl.).

Some time after Alice filed her claim, Principal Life contacted Alice and informed her that another individual was named as the beneficiary on their records. (Aff. of Alice Smith at 4). Alice told Principal Life that Richard had retained a copy of the change form designating her as the intended beneficiary and sent a copy to Principal Life. (*Id.*).

In the late summer and early fall of 2007, Principal Life notified Alice and Alma Sue of their competing claims.[9] (Compl. ¶ 20). It further stated that their claims "raised questions of fact and law that could not be resolved by Principal Life without exposing itself and the Plan to the danger of multiple liability" and "gave [Alice and Alma Sue] an opportunity to resolve this matter in order to preserve the Scheduled Benefits from litigation costs and fees." (*Id.*). After Alice Smith and Alma Sue Smith failed to reach a resolution, Principal Life filed the instant interpleader action. (*See* Compl.).

## IV.    <u>Applicable Substantive Law and Discussion</u>

In support of her motion for summary judgment, Alice Smith contends that Richard "substantially complied with the necessary requirements to effect his desired change from his ex-wife to his current spouse Alice" when he completed the Humana Change Form. (Doc. #23 at 11-12) (footnote and emphasis omitted). Although admitting that the Eleventh Circuit has never recognized the "substantial compliance" doctrine, Alice asks the court to look to the other circuits who have applied the doctrine, and find that she is due the insurance benefits. (*Id.* at 12-23). Alma Sue does not address Alice's arguments, but instead contends that ERISA's "plan documents" rule bars Alice from receiving the benefits and completely rests her argument in the Supreme Court's

_____

[9] Principal Life also notified Cynthia that there was a named beneficiary of record, and that the benefits were not payable to her. (*Id.* ¶ 21).

recent decision in *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, __ U.S. ___, 129 S.Ct. 865 (2009).  (Doc. #27 at 2-3; Doc. #25 at 4-7).

### A.   The Competing Doctrines - "Substantial Compliance" and the "Plan Documents" Rule

The arguments presented by the parties are dramatically different and Alma Sue does not even respond to Alice's argument.  Accordingly, the court first outlines the doctrines underlying each party's arguments and then addresses the merits of those arguments.

### 1.   "Substantial Compliance" Doctrine

ERISA does not contain any provisions governing disputes between claimants to plan proceeds, or addressing whether an insured has effectively changed a beneficiary designation. *Metropolitan Life Ins. Co. v. Johnson*, 297 F.3d 558, 564 (7th Cir. 2002); *Phoenix Mutual Life Ins. Co. v. Adams*, 30 F.3d 554, 559 (4th Cir. 1994).  In the absence of federal law, federal courts ordinarily apply the law of the forum state.  *See Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938).  However, ERISA preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan" which is subject to ERISA.  29 U.S.C. § 1144(a).

The question, therefore, is whether ERISA preempts state law in this instance.  *See e.g., Metropolitan Life Ins. Co.*, 297 F.3d at 564-65.  The Eleventh Circuit has not addressed the issue whether ERISA preempts state law under these facts, and has declined the opportunity to do so at least once.  *See Liberty Life Ass. Co. of Boston v. Kennedy*, 358 F.3d 1295, 1303 (11th Cir. 2004). Alice urges the court to adopt the federal common law of substantial compliance.  The Fourth Circuit articulated the doctrine of substantial compliance as follows:

> [an] insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by

> undertaking positive action which is for all practical purposes similar to the
> action required by the change of beneficiaries provisions of the policy.

*Phoenix Mut. Life Ins. Co.*, 30 F.3d at 564.  The Second and Seventh Circuits have explicitly adopted

similar tests,  *Metropolitan Life Ins. Co.*, 297 F.3d at 566 *and O'Shea v. First Manhattan Co. Thrift*

*Plan & Trust*, 55 F.3d 109, 113-14 (2d Cir. 1995), while the Ninth and Tenth have looked to state

law,[10] *Peckham v. Gem State Mutual of Utah*, 964 F.2d 1043, 1051 (10th Cir. 1992) and

*BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 830 (9th Cir. 2000).

### 2.    The "Plan Documents" Rule

The plan documents rule, also referred to as ERISA's writing requirement, mandates that

"[e]very employee benefit plan shall be established and maintained pursuant to a written document."

29 U.S.C. § 1102(a)(1).  The written instrument must specify the basis on which payments are made

to and from the plan.  29 U.S.C. § 1102(b)(4).  ERISA fiduciaries are required to discharge their

duties "in accordance with the documents and instruments governing the plan."  29 U.S.C. §

1104(a)(1)(D).  The rule aims to ensure that "every employee may, *on examining the plan*

*documents*, determine exactly what his rights and obligations are under the plan."  *Curtiss-Wright*

*Corp. v. Schoonejongen*, 514 U.S. 73, 83, 115 S. Ct. 1223 (1995) (emphasis in original).

The Supreme Court recently examined the "plan documents" rule in *Kennedy*.  129 S. Ct. At

865.  In *Kennedy*, the Court held that a plan administrator properly disregarded a waiver embodied

in a divorce decree "owing to its conflict with the designation made by the former husband in

accordance with the plan documents." 129 S.Ct. at 868.  The decedent, William Kennedy, was a

participant in E.I. DuPont de Nemours & Company's savings and investment plan ("SIP"), governed

---

[10] In both instances, the state law has been that of substantial compliance, with slightly
different formulations.

by ERISA. *Id.* The SIP provided forms for designating and changing a beneficiary. *Id.* In 1974, William signed a form designating his then-wife Liv as the beneficiary of his SIP. *Id.* at 869. William and Liv's marriage did not last, and their 1994 divorce decree stated that Liv was:

> divested of all right, title, interest, and claim in and to ... [a]ny and all sums ... the proceeds [from], and any other rights related to any ... retirement plan, pension plan, or like benefit program existing by reason of [William's] past or present or future employment.

*Id.* William died without having executed any documents removing Liv as the SIP beneficiary. *Id.*

After William's death, DuPont relied upon William's designation form and paid the SIP funds to Liv. *Id.* William's estate sued DuPont and the SIP plan administrator, arguing that the divorce decree constituted a waiver of the SIP benefits by Liv, and that DuPont had violated ERISA by distributing the benefits to Liv. *Id.* The Supreme Court disagreed and held that the plan administrator had a statutory duty under ERISA to pay the benefits to Liv in conformity with the plan documents. *Id.* at 875-76. The *Kennedy* Court explained that:

> by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: "simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules."

*Id.* at 875-76 (quoting *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (7th Cir.1990) (Easterbrook, J., dissenting)). The Court recognized that "the cost of less certain rules would be too plain" in that "[p]lan administrators would be forced 'to examine a multitude of external documents that might purport to affect the dispensation of benefits,' and be drawn into litigation like this over the meaning and enforceability of purported waivers." *Id.* at 876 (quoting *Altobelli v. IBM Corp.*, 77 F.3d 78, 82-83 (4th Cir.1996) (Wilkinson, C.J., dissenting)).

11

B.      **Application of the Doctrines to the Facts Presented**

After consideration of each argument presented by Alice and Alma Sue, the court rejects both.  Ironically, however, the court uses the doctrine articulated by Alma Sue to find that Alice is due the insurance benefits.[11]

Under the "plan documents" rule, the court need only look at the Plan itself to determine the outcome of the dispute between the two Mrs. Smiths.  The court does not need to delve into the open question of the application of the doctrine of substantial compliance, as urged by Alice.  A straight-forward interpretation of  the Plan document allows the Humana Change form to serve as a beneficiary designation change for the Principal Life insurance policy.  Further, the Plan allows that change form, although not received until after Richard's death, to serve as a change in his beneficiary as of the date he signed the request.

The Plan document contains a section detailing how a member should change a designated beneficiary.  That section states that "A Member may later change a named beneficiary by sending a written request to The Principal."  (Plan Doc., Ex. 1 to Doc.#9 at GC 150-2, Article 3).  There is no requirement of a particular form, but merely an obligation to make a "written request."  The Humana Change form clearly constitutes such a "written request."  The form contained a section entitled "Change Beneficiary," and Richard indicated in that section that he wanted to change his "Basic Life" primary beneficiary to "Alice Smith" with a secondary beneficiary of "Cindy Smith."

---

[11] As is readily apparent from the above discussion of the Supreme Court's recent opinion in *Kennedy*, the facts of this case have one material distinction rendering *Kennedy* inapplicable: Richard executed a document removing Alma Sue as beneficiary. William Kennedy, however, *never executed* any documents removing Liv as his beneficiary; instead, his estate relied upon the divorce decree. The Supreme Court's emphasis of the plan documents rule and concerns for the "multitude of external documents" which would need to be examined by plan administrators simply does not come into play here.

(Ex. C. to Compl.).  This writing clearing constitutes a written request by Richard to change his beneficiary to Alice.

That the form was not mailed to Principal Life until after Richard's death is of no consequence under the express terms of the Plan.  The Plan states that "A change will not be effective until recorded by The Principal.  Once recorded, the change will apply as of the date the request was signed . . . ." (Plan Doc., Ex. 1 to Doc. #9 at GC 150-2, Article 3).  There is no requirement that the change be received by Principal Life before the death of the member.  Here, Richard signed the request on February 26, 2007, and the request was forwarded to Principal Life by Alice in May 2007, after she was notified by Principal Life that she was not the recorded beneficiary.  Under the express terms of the Plan, once Principal received and recorded that request, the beneficiary was Alice as of February 26, 2007.

This result is similar to the one reached by the Eleventh Circuit in *Liberty Life Ass. Co. of Boston v. Kennedy*, 358 F.3d 1295 (11th Cir. 2004).  In *Kennedy*, the Eleventh Circuit concluded that the policy at issue allowed Kennedy's will to serve as a beneficiary designation.  *Id.* at 1302.  Clint Kennedy obtained life insurance through his employer, Georgia-Pacific, and the policy was governed by ERISA.  *Id.* at 1296.  At the time he obtained the insurance, he designated his wife Barbara as the sole beneficiary under the policy.  *Id.* at 1297.  The Plan policy stated that an employee could change the beneficiary by sending "acceptable written notice" to Georgia-Pacific with the change taking "effect from the date the employee signed the notice."  *Id.* at 1298.

Barbara and Clint divorced in 1991, and Clint later remarried Mary Beth Kennedy.  *Id.*  In 1993, after his marriage to Mary Beth, Clint executed a will that included a change to "all the proceeds of life insurance provided to [Clint] by [his] employer" and designated Mary Beth as receiving 25% of the insurance benefits and each of his four children receiving 18.75% of the

benefits.  *Id.*  Clint never amended his original designation of beneficiary with Georgia-Pacific.  *Id.* at 1297-98.  Following Clint's death in 2000, the will was filed with Georgia-Pacific, *id.* at 1302, and after receiving competing claims for the benefits, the insurance company filed an interpleader action to determine whether Barbara or Mary Beth and the four children were entitled to the proceeds of the policy.  *Id.* at 1299.

The Eleventh Circuit determined that "the Liberty Mutual policy . . . allow[ed] Mr. Kennedy's will to serve as beneficiary designation for the Georgia-Pacific executive life insurance policy."  *Id.* at 1302.   The policy required "that a beneficiary provide a signed written notice to Georgia-Pacific that he or she desire[d] to change beneficiaries, but it does not require the beneficiary to use a designated form."  *Id.* at 1300.  The court determined that "[t]he will was effective as of the date of its signing, and it was the latest designation Mr. Kennedy executed before his death."  *Id.* at 1302.  As such, the will effectively changed the beneficiary designation under the provisions of the Plan.  *Id.*

The result is exactly the same here.  The provisions of the Plan allow for the Humana Change form, executed by Richard on February 26, 2007, to change the beneficiary of his Principal Life policy to Alice.  "'The award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself.'"  *Id.* (quoting *Lockhart v. United Mine Workers of Am 1974 Pension Trust*, 5 F.3d 74, 78 (4th Cir. 1993)).  Therefore, Alice is the designated beneficiary under the life insurance policy.

**V.    Conclusion**

For the reasons outlined above, Alice H. Smith's Motion for Summary Judgment (Doc. #23) is due to be granted in full.  Alma Sue Smith's Motion for Summary Judgment (Doc. #24) is due to be denied.  A separate order will be entered entering judgment in favor of Alice H. Smith.

**DONE** and **ORDERED** this _____14th_____ day of December, 2009.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE